UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CAROLINE ROBINSON**

    Plaintiff,

vs.                                                 **Case No. 8:05-CV-780-T-EAJ**

**JO ANNE B. BARNHART,
Commissioner of
Social Security,**

    Defendant.

_____/

**FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her claim for a period of disability and disability benefits under the Act.[1]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with

---

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge. (Dkt. 23).

applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). This court may not "decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]"; therefore, the Commissioner's decision must be affirmed if it is supported by substantial evidence. Id. (citing 42 U.S.C. §405(g)); Allen v. Schweiker, 642 F.2d 799, 800 (5th Cir. 1981). If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). Further, if the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff alleges an onset of disability on March 11, 1999, due to fibromyalgia, depression, anxiety, and a personality disorder. (T 80, 88) Forty-one years old at the time of the ALJ's decision on August 28, 2003, Plaintiff has a high-school education and prior work experience as an data entry clerk, collection clerk, and customer service representative. (T 12, 100-105)

Plaintiff initially filed a claim for Disability Insurance

Benefits and Supplemental Security Income payments on May 13, 1999. (T 11) The ALJ heard testimony from Plaintiff, Plaintiff's daughter Nakesia Conyers, and Plaintiff's friend Debra Matthews at a hearing on May 31, 2000. (T 761) This claim was denied in a decision issued on January 23, 2001. (T 49-55) Subsequently, Plaintiff filed a request for Appeals Council review on January 30, 2001. (T 65) Plaintiff then filed a second application for benefits on March 19, 2001, which the Appeals Council treated as duplicative and consolidated with Plaintiff's original application on remand to the ALJ. (T 72-74) A second hearing was held before the ALJ on March 17, 2003. (T 727)

In the decision denying benefits, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date and continued to meet the insured requirements of the Act through August 28, 2003. (T 12, 13). He found that Plaintiff had fibromyalgia, depression, anxiety, and a personality disorder, which were a severe impairments but did not fulfill or equal any listed impairment. (T 18) The ALJ determined that Plaintiff had the residual functional capacity (RFC)to perform substantially all of the demands of light work, which may involve lifting up to twenty pounds with frequent lifting or carrying objects weighing up to ten pounds, walking/standing, or sitting most of the time and using the arms/legs to push/pull controls. (T 24) He noted that a person found capable of light work is also capable of sedentary work. (T

24) The ALJ decided that Plaintiff was able to return to her past relevant work of collection clerk and customer service clerk from March 11, 1999 through July 23, 2001 and that Plaintiff was able to perform other jobs that existed in significant numbers in the national economy beginning January 24, 2001. (T 24) Consequently, the ALJ denied Plaintiff's claim for disability benefits. (T 26)

On March 11, 2005, the Appeals Council denied Plaintiff's request for review. (T 27) Accordingly, the ALJ's August 28, 2003 decision is considered the final decision of the Commissioner. (T 27).

Plaintiff argues that the Commissioner erred by failing to (1) give appropriate weight to the opinions and diagnoses of her treating physicians; (2) consider the combined effect of all her impairments and subjective symptoms; and (3) properly consider the testimony of all witnesses. (Dkt 23 at 4). For the reasons set forth below, the decision of the Commissioner shall be affirmed.

The medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II.

**A.**   Plaintiff contends that the ALJ erred by failing to give appropriate weight to the opinion of her treating physicians, Dr. Emma Bautista O'Campo, M.D. ("Dr. O'Campo") and Dr. Muhammad A. Rahman, M.D. ("Dr. Rahman"). Specifically, Plaintiff argues that

4

the ALJ did not give due weight to her physicians' opinions when he declined to accept Drs. O'Campo's and Rahman's opinions that Plaintiff was disabled and unable to work as a result of her physical and mental impairments. Pointing out that even a one-time consulting psychologist found Plaintiff possessed memory deficits, lived a restricted lifestyle, and may need assistance managing her financial affairs, Plaintiff contends that the ALJ rejected her treating physicians' opinions without good cause. (Dkt. 23 at 20). Defendant argues that the ALJ properly evaluated and weighed the treating physicians' opinions. (Dkt. 20 at 5). Further, Defendant asserts that Social Security law mandates that decisions about Plaintiff's disability are within the Commissioner's fact-finding power, rather than the realm of the physicians' medical expertise. Id. at 8.

 The ALJ must give substantial or considerable weight to a treating physician's opinion, unless good cause is shown to the contrary. Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985); see also 20 C.F.R. 404.1527(d)(2). Good cause exists for discounting a treating physician's opinion when it is conclusory or unsupported by objective clinical records. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991)(citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). Further, the Commissioner may properly discount a treating physician's opinion that Plaintiff is disabled when it is unsupported by objective clinical evidence. See McSwain

v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987)(finding that the Commissioner properly discounted a treating physician's opinion that claimant was "totally disabled" when clinical evidence failed to support this conclusion). In this Circuit, when the Commissioner ignores or does not properly refute the treating physician's testimony, it must be accepted as true as a matter of law. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). However, treating physicians' opinions as to whether plaintiff is disabled or incapable of working are not controlling; such decisions are reserved for the Commissioner. 20 C.F.R. § 404.1527(e).

In accordance with Broughton, 776 F.2d at 961-62, the ALJ gave substantial weight to Plaintiff's treating physicians' opinions, as he found Dr. O'Campo's descriptions of Plaintiff's limitations "very persuasive" because they were detailed and generally consistent with the State agency reviewing physicians' opinions. (T 20) Upon finding Plaintiff's testimony about the nature of her pain to be generally credible and supported by Dr. O'Campo's assessments, the ALJ declined to adopt the State agency reviewing physicians' opinions. (T 20-21) Under 20 C.F.R. § 404.1513, the ALJ properly classified the chiropractor, Carlos Guzman, D.C. ("Dr. Guzman"), as an "other source" instead of an "acceptable source" of medical evidence; therefore, he accorded little weight to Dr. Guzman's opinions. (T 21) Following the guidelines in 20 C.F.R.

404.1527(e), the ALJ did not give significant weight to Dr. O'Campo's opinions that Plaintiff was unable to work for three-month periods beginning in February 2001 and subsequently in March 2002, July 2002, and January 2003. (T 21) Similarly, Dr. Rahman's opinions as to Plaintiff's inability to work for three month periods in January and October 2002 were discounted with "good cause" as described in Edwards, because they were inadequately supported by objective clinical evidence. (T 21-22) Further, the ALJ pointed out that the opinions as to Plaintiff's ability to work were outside of both Dr. O'Campo's and Dr. Rahman's medical expertise and were, therefore, reserved for the Commissioner. (T 21)

The ALJ considered Dr. O'Campo's and Rahman's opinions that Plaintiff was unable to work; however, in his decision, the ALJ indicated several factors amounting to good cause for giving less than substantial weight to these opinions. First, the ALJ explained that opinions as to whether Plaintiff was disabled were reserved for the Commissioner. (T 21) Second, he noted that such decisions were not within the medical expertise of either physician and were better addressed by a vocational expert through the use of hypotheticals. (T 21) Finally, he also found that objective clinical findings of both Drs. O'Campo and Rahman did not support a finding of disability. (T 21-22) Thus, the ALJ properly noted that although Dr. O'Campo's records from March 2002 through January

7

2003 reflected Plaintiff's multiple complaints, the physician's records did not indicate any specific limitations. (T 573-639)

After considering the record as a whole, the ALJ did not err in giving little weight to the treating physicians' opinions that Plaintiff is unable to work.

**B.** Plaintiff also alleges that the ALJ did not give adequate consideration to the combined effect of all of her impairments and subjective symptoms. (Dkt. 23 at 20). Specifically, Plaintiff argues that the ALJ omitted evidence of cervical and lumbar sprain/strain, carpal tunnel syndrome, headaches, sprain/strain of right knee and left shoulder, bursitis, crying, muscle spasms, vomiting, and feeling nervous and apprehensive. (Dkt. 23 at 22). In addition, Plaintiff claims that the ALJ declined to address the side-effects of Plaintiff's medications. Id.

It is well-established that the ALJ must evaluate both the separate and combined effect of Plaintiff's claimed impairments. 20 C.F.R. § 416.923; Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986); Walker v. Bowen 826 F.2d 996, 1001 (11th Cir. 1987); Bowen v. Heckler 748 F.2d 629, 634 (11th Cir. 1984). Remand is warranted when the ALJ fails to follow this procedure. Gibson, 779 F.2d at 623.

Despite Plaintiff's contentions that the ALJ failed to give proper consideration to the combined effect of her impairments, the ALJ did, in fact, consider the effects of Plaintiff's impairments

8

as evidenced by his written decision. (T 24 at Findings no. 3 & 4) The Eleventh Circuit has held that this language is sufficient to fulfill the Commissioner's obligation to consider the combination of all impairments. <u>Wheeler v. Heckler</u>, 784 F.2d 1073, 1076 (11th Cir. 1986)(language in ALJ's decision stating that claimant was "not suffering from any impairment, or a combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months" evidenced that the ALJ considered impairments in combination). Although the ALJ found that Plaintiff suffered from fibromyalgia, depression, anxiety, and a personality disorder, he also discussed Plaintiff's medical history at length in his decision (T 13 - 18) and noted that "no treating or examining physician has reported findings equivalent in severity to the criteria for any listed impairment." (T 18)

Accordingly, the language in the ALJ's decision meets the requirement elucidated in <u>Wheeler</u>, and demonstrates that, as required under <u>Gibson</u>, the ALJ made a particular and well-formulated determination of the effect of Plaintiff's impairments; therefore, remand is not warranted.

Plaintiff further alleges that the ALJ did not adequately consider her subjective symptoms under the Eleventh Circuit's three-part pain standard. Thus, Plaintiff claims that the ALJ failed to take into account her nervousness, crying, and side-

effects from her medications. (Dkt. 23 at 22).

The Eleventh Circuit applies a three-part "pain standard" when evaluating subjective complaints of pain. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Under this standard the claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Id. (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). If the ALJ declines to credit a claimant's pain testimony, he must provide adequate and specific reasons for discrediting the testimony. Id. at 1561-1562. A failure to clearly formulate the motives for discrediting subjective pain testimony requires that the testimony be accepted as true as a matter of law. Id. at 1562 (citing Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988)).

The ALJ followed the proper procedure for evaluating Plaintiff's subjective symptoms. When he considered Plaintiff's testimony as to subjective symptoms, such as pain, the ALJ specifically referred to the Social Security regulations, as well as Landry v. Heckler, 782 F.2d 1551 (11th Cir. 1986). (T 18) Additionally, the ALJ followed the Eleventh Circuit three-part pain standard enunciated in Foote.

After accepting that Plaintiff's objective medical condition

10

met the requirement of the first part of the three-part pain standard because her condition could have reasonably produced some of the symptoms alleged, the ALJ followed the rule in Foote and proceeded to explain why Plaintiff's allegations of her functional limitations were not completely credible. (T 19-22) Specifically, the ALJ examined Plaintiff's medical records and noted that while the medical records of Plaintiff's treating physician, psychiatrist Dr. Rahman, provided a GAF score of 45 in September 2001, which indicated serious impairments in social, occupational, or school functioning, later clinical records evidence a marked improvement in Plaintiff's condition. (T 20) The ALJ determined that Dr. Rahman's records supported the conclusion that, beginning on January 24, 2001, Plaintiff was limited to performing simple, repetitive mental tasks. Id.

    Although the ALJ considered Plaintiff's allegations that she needed to be solitary and lie down for fifty percent of the day, he found these claims to be less than credible because no physician had opined that such limitations were medically necessary. (T 21) Similarly, Plaintiff's subjective complaints were not supported by Dr. O'Campo's restrictions, which indicated that Plaintiff should refrain from heavy lifting, pushing, pulling, or prolonged walking, standing, or sitting. (T 20) Despite Plaintiff's claim that her medications made her drowsy, the ALJ discounted this testimony because no clinical findings demonstrated that Plaintiff

experienced fatigue as a result of her medications. (T 21) Thus, the ALJ properly considered and determined the credibility of Plaintiff's subjective symptoms in accordance with the guidelines set forth in Foote. There is substantial evidence to support the ALJ's findings in evaluating Plaintiff's testimony to pain and other subjective symptoms. See Allen v. Sullivan, 880 F.2d 1200, 1203 (11th Cir. 1989).

**C.** Finally, Plaintiff contends that the ALJ did not properly consider the testimony of all witnesses when he failed to take into consideration Debra Matthews's testimony from the first hearing, and the pain questionnaire completed by another witness, Johniece Stewart. (Dkt. 23 at 22). Plaintiff also claims that the ALJ failed to make a credibility determination as to the testimony of Plaintiff's daughter, Ms. Nakesia Conyers. (Dkt. 23 at 22).

At the first hearing, Ms. Matthews testified that she usually found Plaintiff lying in bed when Ms. Matthews visited her. (T 783) Ms. Matthews recounted Plaintiff's difficulty holding objects in her hands, walking short distances, concentrating, responding to questions, and balancing. (T 784-785) Her testimony also described Plaintiff as anxious about riding as a passenger in cars, and stated that Plaintiff had not driven a car since about 1998. (T 785-786) Ms. Matthews noted that before Plaintiff stopped working, Ms. Matthews often retrieved Plaintiff from work when she became ill. (T 786)

In <u>Lucas v. Sullivan</u>, the Eleventh Circuit remanded the plaintiff's case to the ALJ for failing to consider the testimony of the plaintiff's daughter and neighbor. 918 F.2d 1567, 1574 (11th Cir. 1990). The Eleventh Circuit instructed the ALJ to fully explain the weight given to each piece of impairment evidence and his reasons for accepting or rejecting the evidence, "including all testimony presented at the previous hearing or any subsequent hearing." <u>Id.</u> (citing <u>Gibson</u>, 779 F.2d 619).

In this case, the ALJ did not specifically mention the questionnaire that Ms. Stewart completed for Plaintiff; however, this is not reversible error because the probative value of this document is relatively low. The questionnaire does not contain Ms. Stewart's observations of Plaintiff's subjective symptoms, instead, Ms. Stewart merely transcribed Plaintiff's allegations of pain. Although Ms. Stewart signed the questionnaire that she completed for Plaintiff, the written responses to the questions, particularly question four, which was answered in the first person, demonstrate that Plaintiff provided the answers to the questionnaire. (T 347-349)

Plaintiff argues that <u>Lucas</u> is dispositive of the ALJ's duty to weigh each testimony as to Plaintiff's impairments; however, <u>Lucas</u> is distinguishable from the instant case. <u>Lucas</u> found fault with an ALJ's decision that omitted discussion of third-party witness testimony; in the instant case, the ALJ has merely declined

13

to discuss a questionnaire that a third-party completed for Plaintiff.

The ALJ also properly considered and discredited the testimony of Plaintiff's daughter, Nakesia Conyers.[2] Plaintiff proposes that <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1254 (11th Cir. 1983), supports her argument that the ALJ did not make a sufficient credibility finding as to Ms. Conyers's testimony. (Dkt. 23 at 23). <u>Tieniber</u> held that an ALJ's credibility determination was insufficient because it did not explicitly delineate the reasons for rejecting claimant's and daugher's testimony when the evidence was "the only direct evidence produced from the disabling period . . . [and] [n]o other evidence discussed by the ALJ refutes or otherwise contradicts this subjective evidence." <u>Id.</u>  Here, however, the ALJ's decision specifically recounted Ms. Conyers's testimony and her observations about Plaintiff's condition. (T 19) Further, the ALJ explained that he found Ms. Conyers's testimony to be corroborative of Plaintiff's testimony, but unsupported by objective medical records. (T 22) Thus <u>Tienieber</u> is distinguishable and does not demonstrate error as to the ALJ's evaluation of Ms.

---

[2] Ms. Conyers's testimony was corroborative of Plaintiff's testimony. (T 22) Accordingly, she testified that Plaintiff was forgetful, cried frequently, and stayed in bed for most of the day. (T 750-754) She confirmed Plaintiff's allegations of pain and further added that Plaintiff did not do household chores or go the grocery store. (T 751-752) Although the ALJ did not consider Ms. Conyers's testimony from the first hearing, this testimony is largely duplicative of her testimony at the second hearing. (T 787-790)

14

Conyers's testimony.

Plaintiff correctly alleges that the ALJ did not review Ms. Matthew's testimony from the first hearing in his decision following the second hearing. However, in light of the fact that Ms. Matthew's testimony was duplicative of Plaintiff's testimony, which the ALJ did not fully credit, the ALJ's omission does not constitute reversible error. McCloud v. Barnhart, 166 Fed.Appx. 410, 417 (11th Cir. 2006)(when lay testimony is unsupported by medical evidence, any error in excluding that testimony is harmless); see also Allen v. Schweiker, 642 F.2d 799 (5th Cir. 1981)(ALJ's omission of plaintiff's spouse's testimony from his decision did not constitute reversible error because the testimony was largely the same as plaintiff's discredited testimony). Accordingly, although the ALJ did not mention Ms. Matthew's testimony in his decision, this omission does not constitute reversible error.

## CONCLUSION

Accordingly and upon consideration, it is **ORDERED** that:

(1) the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**, each party to bear its own costs and expenses; and

(2) the Clerk of Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. 405(g).

**DONE AND ORDERED** in Tampa, Florida on this 13th day of July, 2006.

_____
ELIZABETH A JENKINS
United States Magistrate Judge